UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| MARTINA A. MEDINA,<br><br>  Plaintiff,<br><br>v.<br><br>QUANTUM DEBT SOLUTIONS, LLC,<br><br>  Defendant. | CIVIL COMPLAINT<br><br>CASE NO. 5:23-cv-00019<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Now comes MARTINA A. MEDINA ("Plaintiff") by and through the undersigned, complaining as to the conduct of QUANTUM DEBT SOLUTIONS, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.*, and the Texas Consumer Debt Management Services Act ("TCDSMA") under Tex. Fin. Code § 394.201 *et seq.*, in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business in the Southern District of Texas, resides within the Southern District of Texas, and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in the Southern District of Texas.

5. Defendant is a credit repair organization and debt settlement provider holding its services out as providing consumers the opportunity to regain their financial freedom and become debt free. Defendant is a limited liability company organized under the laws of the state of Texas with its principal place of business located at 801 East Fern Avenue, Suite 120, McAllen, Texas 78501.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In approximately May 2022, Plaintiff was having issues with certain creditors, and heard about Defendant's services through a friend.

8. Defendant advised that Plaintiff could enroll a number of debts into its program, at which point Plaintiff would make monthly payments to Defendant, who would in turn use such funds for the purpose of resolving Plaintiff's obligations, which would in turn improve her credit history.

9. Defendant represented both explicitly and implicitly that its services, if they worked correctly and were completed, would ultimately improve Plaintiff's credit.

10. Defendant further promised that after Plaintiff's first month's payment, Defendant would begin informing her creditors that she was working with Defendant, and that all collection calls

would stop, adding that Plaintiff would begin to experience an increase in her credit score as payments were made.

11. Believing that, by signing up for Defendant' services, Plaintiff would no longer have to deal with the collection calls and debts that were enrolled in Defendant's program, and that her credit would improve fast, Plaintiff entered into a contract for the provision of Defendant's services.

12. Plaintiff began making her payments to Defendant, which included a $269.90 upfront fee, and payment of $387.47, both made on May 16, 2022, followed by monthly payments of $387.47 thereafter.

13. As a result of Defendant's billing practices and procedures, Plaintiff had to pay over $600 before Defendant provided any services to Plaintiff.

14. After making her monthly payments, Plaintiff continued to get contacted by her creditors, prompting Plaintiff to see what was going on with Defendant's services.

15. Defendant represented that it was actively paying down the enrolled debts, that Plaintiff's credit would begin improving quickly, and that the collection calls should stop.

16. However, despite making her payments to Defendant, and the nature of Defendant's promises regarding the services it could provide, Defendant failed to deliver on its promise that Plaintiff would no longer be contacted by her creditors.

17. Instead, when Plaintiff would get contacted by her creditors, she would inform that they should be working with Defendant, only for Defendant's creditors to advise that Defendant had not been making the payments it represented were being made.

18. Furthermore, despite Defendant's representations that Plaintiff's credit score would improve after approximately one month, Plaintiff's credit score has only decreased as a result of Defendant's services.

19. Upon information and belief, Defendant intentionally gave Plaintiff the runaround and misrepresented the services it was performing so as to continue bilking Plaintiff for the exorbitant monthly payments, despite not delivering on the promises that induced Plaintiff to utilize Defendant's program.

20. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

21. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

22. Plaintiff repeats and realleges paragraphs 1 through 21 as though fully set forth herein.

23. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

24. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of

4

improving a consumer's credit. Defendant represented to Plaintiff that both the explicit and implicit purpose of its services was to improve Plaintiff's credit.

    a. **Violations of CROA § 1679b(a)**

25. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

26. Defendant violated the above references provisions of the CROA through the generally deceptive and misleading nature in which it held out its services to Plaintiff. Defendant represented that Plaintiff's credit would improve after a month, but it only declined. Defendant represented that by paying Defendant, Plaintiff would no longer be contacted by her creditors, although Plaintiff was still contacted by her creditors despite paying hundreds of dollars to Defendant. Defendant further represented to Plaintiff that her monthly payments were going towards paying down her debts; however, upon speaking with Plaintiff's creditors, such creditors informed Plaintiff that Defendant had not been making the monthly payments as represented to Plaintiff. Defendant's entire business model is premised upon over-promising, under-performing, and subsequently giving consumers the runaround so as to continue bilking Plaintiff for payments. Defendant's conduct is part of its overarching scheme to induce consumers to sign under false pretenses, take payments before any services are performed, and subsequently fail to deliver the services despite having already received hundreds of dollars from vulnerable consumers.

    b. **Violation of CROA § 1679b(b)**

27. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

28. Defendant violated § 1679b(b) as they charged and received money from Plaintiff in exchange for the performance of services before such services were fully performed. Defendant charged Plaintiff, and Defendant received, consideration from Plaintiff on an upfront basis before any services were performed, in plain violation of § 1679b(b). Furthermore, throughout the life of their dealings, Defendant routinely charged Plaintiff fees or otherwise caused service fees to be created for services before any services were fully performed.

29. Plaintiff paid Defendant hundreds of dollars in fees despite Defendant failing to perform the services and achieve the represented results that would have justified its retention of such payments and fees.

 **c. Violation of CROA § 1679c**

30. The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers.

31. Defendant violated § 1679c through their complete failure to provide Plaintiff the required disclosures or a copy of the required disclosures.

 **d. Violation of CROA §§ 1679d & 1679e**

32. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for any contracts between CROs and their customers, including "a conspicuous statement, in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before

6

midnight on the 3rd business day after the date on which you signed the contract. See attached notice of cancellation form."

33. Defendant violated §§ 1679d through their noncompliant contracts. Defendant's contract further fails to provide the extent of information required by 1679d(b).

34. Due to Defendant's noncompliant contract, such contracts are void and unenforceable pursuant to 15 U.S.C. § 1679f(c).

    e.  **Violation of CROA § 1679f(b)**

35.  The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

36.  Defendant violated 15 U.S.C. § 1679f(b) through their attempt to obtain Plaintiff's waiver of the protections afforded her under the CROA. Defendant' contracts contain numerous efforts to obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA.

37.  The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, MARTINA A. MEDINA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

   a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b.  Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c.  Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT

38. Plaintiff restates and realleges paragraphs 1 through 37 as though fully set forth herein.

39. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

40. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

   a. **Violations of Tex. Fin. Code §§ 393.20 & 393.202**

41. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines certain requirements of the contracts entered into between consumers and credit services organizations. § 393.202 discusses the nature of a consumer's right to cancel contracts and how such right must be disclosed to consumers.

42. Defendant violated §§ 393.201(b)(1)-(4) & 393.202 through their failure to provide the information required under Texas law in the contract with Plaintiff. Defendant's contract fails to contain the requisite information.

   b. **Violations of Tex. Fin. Code § 393.302**

43. The TCOSA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

44. Defendant violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

   c. **Violations of Tex. Fin. Code §§ 393.304(1) & 393.305**

45. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage

in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

46. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

### d. Violations of Tex. Fin. Code § 393.307

47. The TCSOA, pursuant to Tex. Fin. Code § 393.307, provides that "[a] credit services organization may not attempt to cause a consumer to waive a right under this chapter."

48. Defendant violated § 393.307 through their attempts to obtain a waiver of Plaintiff's rights afforded her under the TCSOA.

WHEREFORE, Plaintiff, MARTINA A. MEDINA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT

49. Plaintiff restates and realleges paragraphs 1 through 48 as though fully set forth herein.

50. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

51. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

### a. Violations of Tex. Fin. Code § 394.207

52. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

53. Defendant violated § 394.207 in much the same way its deceptive representations regarding the nature of its services violated § 1679b(a)(3)-(4) of the CROA. Defendant falsely represented the nature of its services and did so in an effort to get Plaintiff on the hook for hundreds of dollars in payments for useless and misrepresented services.

### b. Violations of Tex. Fin. Code § 394.209

54. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers.

55. Defendant violated § 394.209(b) through its failure to include the required statements, disclosures, and information in its contract with Plaintiff.

### c. Violations of Tex. Fin. Code § 394.210

56. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

57. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract that complies with Texas law.

### d. Violations of Tex. Fin. Code § 394.212

58. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

59. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

60. Defendant violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided. Defendant unfairly and deceptively misrepresented the nature of its services, failed to deliver the services represented, and unfairly provided Plaintiff the runaround in an effort to continue bilking Plaintiff for monthly payments for nonexistent and deficient services.

WHEREFORE, Plaintiff, MARTINA A. MEDINA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: February 8, 2023                                   Respectfully submitted,

| | |
|---|---|
| s/ Nathan C. Volheim | s/ Eric D. Coleman |
| Nathan C. Volheim, Esq. #6302103 | Eric D. Coleman, Esq. #6326734 |
| Federal I.D. No. 3098183 | Federal I.D. No. 3442886 |
| Counsel for Plaintiff | Counsel for Plaintiff |
| Admitted in the Southern District of Texas | Admitted in the Southern District of Texas |
| Sulaiman Law Group, Ltd. | Sulaiman Law Group, Ltd. |
| 2500 South Highland Ave., Suite 200 | 2500 South Highland Ave., Suite 200 |
| Lombard, Illinois 60148 | Lombard, Illinois 60148 |

(630) 568-3056 (phone)  (331) 307-7648 (phone)
(630) 575-8188 (fax)  (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com  ecoleman@sulaimanlaw.com
nvolheim@sulaimanlaw.com